The Honorable Marilyn Edwards State Representative 2330 North Juneway Terrace Fayetteville, AR 72703-2915
Dear Representative Edwards:
I am writing in response to your request for my opinion on the following questions:
 1. Does Act 1246 of 2005 constitute an unconstitutional taking of public property from the city?
 2. Does a library board have the authority to delegate all fiscal and/or administrative matters to the city government?
 3. Does the language in Section 1(c)(2) [sic: "(c)(2)"] mean that library facilities presently in use are now owned by the respective library boards? If not, how can the library board "sell or otherwise dispose of . . . real or personal property?
RESPONSE
In my opinion, the answer to your first two questions is "no." The answer to your third question is not entirely clear. However, irrespective of whether the library board or the city is the record owner of property, the board may nevertheless sell the property as an agency of the city charged with fulfilling the public purposes detailed in A.C.A. § 13-2-501 et seq. (Repl. 2003 Supp. 2005).
Question 1: Does Act 1246 of 2005 constitute an unconstitutionaltaking of public property from the city?
In my opinion, the answer to this question is "no."
Act 1246 of 2005 (the "Act"), codified at A.C.A. § 13-2-503
(Supp. 2005), provides:
 Act 1246 of 2005
 For An Act To Be Entitled
 AN ACT TO INCREASE THE EFFICIENCY OF PAYMENT OF LIBRARY EXPENSES BY CITY LIBRARY BOARDS OF TRUSTEES; AND FOR OTHER PURPOSES.
 Subtitle
 AN ACT TO INCREASE THE EFFICIENCY OF PAYMENT OF LIBRARY EXPENSES BY CITY LIBRARY BOARDS OF TRUSTEES.
 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code § 13-2-503 is amended to read as follows:
 13-2-503. Powers of trustees — Librarian and staff.
 (a)(1) All moneys received for library purposes, whether by taxation or otherwise, shall belong to
and be designated as the library fund and shall be paid into the city treasury.
 (2) The moneys shall be kept separate and apart from other funds of the city and drawn upon by the proper officers of the library upon the properly authenticated vouchers of invoices of the library board of trustees.
 (b)(1) The board shall have exclusive control of the expenditures of all moneys collected to the credit of the library fund, and of the construction of any library building.
 (2) The board shall have the supervision, care, and custody of the grounds, rooms, or buildings constructed, leased, or set apart for library purposes.
 (c)(1)(A) The board shall have the power to purchase or lease grounds or to purchase, lease, erect, and occupy appropriate buildings for the use of the library.
 (B) When a building erected or purchased by the board is not adapted to its purpose or needs, the board may remodel or reconstruct the building.
 (2) The board may also sell or otherwise dispose of any real or personal property that it deems no longer necessary or useful for library purposes.
 (d)(1) The board shall have the power to appoint a librarian qualified by education, training, experience, and personality, who shall serve at the will of the board.
 (2) The board shall have the power to appoint necessary assistants and other members of the staff, basing their appointment on the recommendation of the librarian.
 (e) The board shall have the power to make necessary rules and regulations for administering the library and shall make provisions for representation at library conventions.
The Act amended previous legislation by providing that revenues for library purposes shall "belong to" the library fund, as opposed to being "paid into the city treasury" as the law mandated prior to the amendment. A.C.A. § 13-2-503(a)(1). The only remaining change from the previous legislation was the substitution of the term "invoices" for "vouchers" in A.C.A. §13-2-503(a)(2).
The legislation just quoted is contained within a subchapter of the Code dealing with municipal libraries and reading rooms. The subchapter authorizes cities, upon voter approval, by ordinance to "establish and maintain a public library for the use and benefit of the inhabitants of the city." A.C.A. § 13-2-501 (Repl. 2003). Section 13-2-502 (Supp. 2005) authorizes cities to fund library construction and operation either from municipal revenues earmarked for these purposes or from the proceeds of a city library tax as authorized by Ark. Const. amend. 30. Section 2 of Amendment 30 specifies that "[t]he proceeds of any tax voted for the maintenance of a city public library shall be segregated by the city officials and used only for that purpose."
Your question reflects an apparent concern that the legislative declaration that revenues earmarked for library purposes "belong to" the library fund marks an impermissible diversion of city funds to fulfill something other than a permissible public purpose. I do not believe this concern is warranted. It is apparent both in title 13, chapter 2, subchapter 5 of the Code and in Amendment 30 that devoting public money to the establishment and maintenance of a city library is entirely unobjectionable so long as the city allots otherwise unpledged funds to the library fund or the voters have approved a library tax pursuant to Amendment 30. Subsection 13-2-503(a)(2) specifies that moneys devoted to library purposes "shall be kept separate and apart from other funds of the city" — a directive that reflects the legislature's clear recognition that these revenues remain city funds notwithstanding their location in a "library fund" accessed by "officers of the library," id. Far from constituting a taking of city funds, I consider this arrangement to be a fully authorized use of city funds for their intended purposes.
Question 2: Does a library board have the authority to delegateall fiscal and/or administrative matters to the city government?
It is unclear precisely what you mean by the phrase "to delegate all fiscal and/or administrative matters." This language might be interpreted as denoting a shift of all activities relating to library operations from the board to the city council or mayor — a move that I believe would contravene the provisions of title 13, chapter 2, subchapter 5 of the Code, which clearly envisions a strong library board that directly controls all library operations. See A.C.A. § 13-2-503.
Question 3: Does the language in Section 1(c)(2)[sic:"(c)(2)"] mean that library facilities presently in use are nowowned by the respective library boards? If not, how can thelibrary board "sell or otherwise dispose of . . . real orpersonal property?
As noted above, A.C.A. § 13-2-503(c)(2) provides that "[t]he board may also sell or otherwise dispose of any real or personal property that it deems no longer necessary or useful for library purposes." The Code does not directly address the issue of whether a city, its library board or either should be the record owner of library facilities. Section 13-2-503 of the Code expressly authorizes a library board to purchase buildings for library use. With respect to donated property, A.C.A. § 13-2-505
provides that the donor "shall have the right to vest the title to the money or real estate in the board of trustees of the library. . . ." Subsection 13-2-509(b)(3) further obligates a library board of trustees annually to provide the city council with "[a] statement of the real and personal property received by devise, bequest, purchase, gift, or otherwise." These statutes suggest that in at least some instances the library board may be the record owner of real or personal property. However, I strongly suspect a court would rule that the city is the beneficial owner of all library property. With respect to the board's statutory authority to sell real or personal library property, it would appear to be immaterial whether it does so as the record owner or as an agent of the city. In either case, the sale would be authorized, as the statute suggests, subject to the condition that the board must be guided in its decision by its strong fiduciary obligations to the city.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh